Sousa v. Chipotle Services, DACA 25-20-08. Counsel, ready when you are. Good morning, may it please the court. My name is Alexandra Jones. I represent the appellant Donald Sousa in this matter and I do intend on reserving approximately three minutes for rebuttal. The only issue in this case is whether the district court erred in granting summary judgment in favor of Chipotle by finding that there was no material issue of fact with respect to pretext in this case. Mr. Sousa filed his claim based solely on the New Mexico Human Rights Act, claiming that he was discriminated on the basis of age when he was wrongfully terminated. There is no dispute that Mr. Sousa has met his prima facie burden for age discrimination under the New Mexico Human Rights Act. The only issue that the court ruled on, the district court ruled on was that there was not evidence sufficient to establish pretext. In making that finding, the district court, in our view, improperly weighed the credibility of witnesses and made findings of fact that were improper at the summary judgment level. It is also my view that the district court ignored controlling Supreme Court precedent in New Mexico, which states that pretext is normally an issue for the jury and that it is largely a credibility issue that comes down to issues of fact and circumstantial evidence that cannot be determined by a court and should not be determined by a court at the summary judgment stage. I also want to point out in Lincoln v. BNSF-RICO, this court has consistently held that pretext does not have to be demonstrated in any specific way. It can be demonstrated through inconsistencies and plausibilities and the like. That's exactly what this case is about. It's about all of the inconsistencies surrounding Mr. Seuss's termination. There are three specific points that I think the court got wrong in this case when it comes to pretext. There is inconsistencies involving the false written warnings that were issued contemporaneous to the final termination notice in this case. Can we talk about those, please? Yes. The false warnings, as you described them, I guess I have a hard time understanding how those warnings could in any way be evidence of pretext. They're kind of nonsensical because they're dated the same day of termination, but, and I think Judge Browning described them as quote, cooked up, but how could that give rise to pretext when, as I understand the argument it is, they were cooked up to use the district court's words to show that he was given an opportunity to sort of correct his conduct. But again, they're dated the same day as the termination. So can you help me understand how those could possibly be evidence of pretext? Sure, absolutely, Your Honor. I think just what the court said is that it's supposed to create this, like this appearance that he was given an opportunity to improve his conduct and he wasn't. And it goes to Mr. Hannon's state of mind. In Young v. Stillen, it talks about, what we're talking about here is whether the decision maker actually believed what they were doing was correct and justified. And in this case, I think the fact that Mr. Hannon felt the need to create these two, I'm calling them false warnings because they never were warnings in this case. Yeah, but if his intent was to show that there was documentation to say, look, the company gave Mr. Sousa an opportunity to correct and he didn't, so that's why we fired him. I mean, you would think if they were gonna give false warnings, they would make it a different date. How about 90 days prior, 180 days prior? Again, that's why I'm just having a hard time understanding how that could be pretext. The documentation, if that was the only reason why they were created, then why not just give the final termination notice, which was a combination of these two final written warnings. I mean, their difference in substance is very confusing and very suspect. Why would he go back and create, I'm sorry, go ahead. Mr. Hannon testified that the only reason he did it was because HR told him to. And I don't see any evidence that you have put forward that contradicts that statement. And in order for you to create a material issue of fact on that, wouldn't you have had to come forward with some evidence calling into question Mr. Hannon's testimony? I don't think so, Your Honor. I think that that is a credibility determination about whether or not he's telling the truth on that. I think the fact that the person who he alleges told him that has no recollection of stating that, has no citations to any policies or reasons as to why Chipotle would issue two final warnings concurrent to a termination, calls into question the credibility of whether or not that's true or whether that's just an after-effect excuse that he's come up with because he's realized that issuing the two final warnings at the same time is suspect. So again, I think that goes. Helgitt versus City of Hays, I mean, we rejected the idea that a plaintiff can withstand summary judgment merely by arguing that a jury could disbelieve a defendant's uncontested testimony. So yes, the jury does have the obligation to determine credibility, but if you're gonna argue that somebody's statement is not true, you gotta give them something to work with, don't you? I think so, Your Honor, but again, focusing on the fact that there is no explanation, there's no reason provided as to why this would occur in this method, is that evidence that calls into question why would you do that? That doesn't make any sense. It's, as Judge Browning said, looks like it's cooked up. Why are you creating these false records if there's no nefarious reason to do so? And so I think that we have some provided evidence that calls into question whether or not that's true combined with the fact that there is no written communications where HR is telling him to do that despite the fact that there are multiple written communications surrounding the termination. Why is there no written communication directing him to do that? So I think all of that is more than us just saying they may not believe him. We don't have any legitimate business reason for Chipotle creating these two final written warnings. On top of that, just by the nature of how they were delivered concurrent to the final termination, it contained factual inaccuracies. And there's multiple inaccuracies as far as the exaggerations that Mr. Hannon gave regarding the conditions of the restaurant. Mr. Sousa unequivocally in his deposition states that they're inaccurate. And so I think Mr. Hannon's creation of these written warnings are attempting to exaggerate the situation, make it look worse than it really was, and I think he's doing that to justify a decision which he knows is not founded. Does it matter that, as I understand it, Chipotle doesn't have a progressive discipline system? I don't think it matters that they don't have a progressive discipline system to the extent that they were not required to follow one. What is concerning to me is that it seems to me that by creating these two written warnings, that shows a consciousness of wrongdoing on behalf of Mr. Hannon, like he feels like he should have given Mr. Sousa multiple opportunities to correct these issues, because I think he does that with other younger employees. And that comes into where I think he shows preferential treatment towards these younger employees and other field leaders in the same position who have documented pest issues, documented cleanliness issues, and he's not doing anything in those cases, no progressive discipline. He talks about verbal warnings that he gives them, but the treatment between Mr. Sousa and these employees who have documented issues is preferential. Who created the forms, the warning and the termination? Mr. Hannon. And so, I guess it's Ms. Barcelona just said, yes, go ahead. She says she doesn't remember doing that. According to Mr. Hannon. According to Ms. Barcelona. Oh, yes, as Mr. Hannon says. Mr. Hannon says HR told me to create the final warnings, and when I asked Ms. Barcelona in her testimony, why on earth would you ever do that, she said, the only reason I can think of, again, not giving me a direct explanation for this case, but the only reason I can think of is documentation purposes. Well, the final termination notice is documentation, and especially in a company that doesn't have a progressive discipline policy, why would you need to create the two final written warnings if it was really only for documentation purposes? What about Judge Browning's findings on the comparative? Yes, Your Honor. I think what he is expecting of plaintiff in this case is to find another case that fits this fact pattern exactly, and I don't think that that's appropriate under the pretext analysis. He relies on Garcia, which is factually distinct from this case. It was a reverse discrimination case where she hadn't even established her prima facie burden, and he says, oh, you were supposed to find infractions that were nearly identical to this. First of all, I don't think that's the standard under New Mexico law, even if it is, we have established that. We have Orkin records of Mr. Sanchez in Phoenix who has continuous pest sightings throughout his Orkin records, and it goes on to talk about the cleanliness issues. We have declarations from the facilities managers that was in those restaurants who talks about the cleanliness issues, how they would fail. What seems to be missing, though, is evidence that Mr. Hannon was aware. Your Honor, I... Or reports, and I think, I mean, would you agree that what's relevant here is what Mr. Hannon knew? I agree it's relevant, and I would point the court to Josh Amey's declaration as well as his testimony. It's in appendix, starts on the first volume of the appendix 217. He talks extensively about Mr. Hannon knowing about these issues involving Mr. Sanchez. Mr. Hannon testifies that he knows that the store that Lady Shaparo supervised failed the EcoShore audits. This idea that an EcoShore audit, which is literally only there for the health and safety of the community, and to make sure that the store is clean and safe, is not of comparable seriousness to these arbitrary internal audits, it's disingenuous. I mean, that is definitely just as serious of an issue, and the fact that Ms. Shaparo receives no discipline, no write-ups, not even a verbal warning for a failed EcoShore audit, when that store has never failed an EcoShore audit under Mr. Souza's supervisory role, it's going too far. It's going into issues that we believe the jury should be able to determine. We're not comparing apples and oranges like the cases Judge Browning relied upon. We have the same supervisor. We have similar issues. We have food and safety issues. We are pointing to comparator evidence that we believe is sufficient to get to a jury. The district court seemed to think it was important how long the unkindliness, pest, lack of control had occurred. So two issues with that. One, again, I think that the false warnings were created to make it appear that there was longer issues than existed. Second of all, that's contrary again to what Mr. Hannon states in an email in March 17th, which is also cited in our record, where he states the store is clean, the drains are clean. So that is a material issue of fact. On top of that, if you look at the organ records from Mr. Sanchez, those went on for months. It continuously talks about how the pest issues continued for months. It's the same amount of time that it went on. And with that, Your Honor, I'd like to reserve the rest of my time, if that's all right. Good morning, Your Honors. May it please the court. My name is Betsy Bulat, and I'm proud to represent Appali Chipotle Services LLC in this appeal. As Ms. Jones accurately recited for the court, this is a case where there is a single claim of age discrimination under the New Mexico Human Rights Act at issue. The only question before the court today is whether there is evidence sufficient to submit to a jury that age was the but-for cause of Mr. Seuss's termination. Chipotle submits there was not. Even under the de novo, the standard of review that applies here, and viewing the facts in the light most favorable to Mr. Seuss. As I begin my argument, I invite the panel to ask any questions it may see fit. To start, the undisputed facts here show that Mr. Seuss failed to remediate a serious cockroach infestation spanning over two months. In the week prior to his termination, he failed to meet cleanliness standards at not one but four of his restaurants in a single week. Chipotle properly exercised its business judgment and found that it presented unacceptable risks to retain Mr. Seuss in the face of these cleanliness and food safe issues. It wasn't abrupt about face, though, in that he had received recognition for clean stores or running a good ship at his stores as well as getting a pay increase, right? Contemporaneously. What the record shows, Your Honor, is that he met sales goals. He was not recognized at any point for cleanliness or food safe conditions, and that was for the 2021 year. So he received a merit increase based on his sales performance in 2021. There was nothing related to cleanliness or food safe standards associated with that. And I respectfully disagree that it was an about face. Mr. Hannon met with Mr. Seuss on February 9th of 2022, and they had a lengthy conversation regarding his failure to keep the University of New Mexico Chipotle in good, clean order. This conversation continued on for the next six weeks. Mr. Seuss admits he was in constant contact with his supervisor, Mr. Hannon, about his restaurant, both UNM and others, about their cleanliness and food safe conditions. All right, well, here's what I'm talking about, and you can tell me that I'm wrong, and I'll double check, but my information is in 21, in a routine weekly video message to the company, Chipotle recognized Seuss as a top performing field leader in the company. The recognition was based on Seuss' stores receiving an AB rating, which refers to Chipotle's store rating system that considers cleanliness. An AB rating, Your Honor, considers multiple factors. I believe it's upwards of 20 factors. Is cleanliness one of them? I'm not sure, Your Honor. What I do know is that the record indicates that Mr. Hannon recognized performance based on sales performance, and he did hit that for 2021. There's no dispute about that. There's no dispute that his restaurants weren't making money. There is evidence that he wasn't meeting food safe and cleanliness conditions in 2022, in about the two-month period that we're talking about here. So to survive- Why aren't Mr. Chaparro and Mr. Sanchez helpful comparators here? Thank you for that question, Your Honor. I'll start with Ms. Chaparro. The only evidence in the record that she engaged in anything comparable or similar to Mr. Seuss' misconduct is one failed EcoSure audit in July of 2022, and that was at the same University of New Mexico restaurant that experienced the cockroach infestation under Mr. Seuss. That was a single third-party food safety audit that she failed. There was no evidence of any of her culpability in that. There was no evidence that the restaurants were unclean as part of that audit. I'm sorry, counsel. What do you mean there's no evidence of her culpability? Isn't that her responsibility? So she'd had the restaurant for one or two months. There was never a finding made that the issues there were related to her. She had only had the restaurant for a number of, you know, four to six weeks. But who else would they be related to? To Mr. Seuss, who turned the restaurant over to her in the prior two months. Well, but if Mr. Seuss was terminated because on February 8th, there was an infestation call and then he gets fired on March 28th, you know, that's not even two months, then why would Ms. Chaparro be held to account if she gets the restaurant turned over to her from Mr. Seuss and then two months later, there's still cleanliness issues? It's a fair question, Your Honor. But what I will say is the record has no evidence showing any of Ms. Chaparro's culpability other than the fact that she failed this audit. So it could be a fair assumption or an inference that Your Honor is drawing from the record, but the record itself doesn't associate this failed audit with anything that she did wrong. Well, then why shouldn't we read the record to say there's no evidence that Mr. Seuss was culpable? I would respectfully disagree there is, Your Honor. So in the first instance on February 7th, Mr. Seuss was notified of the Cockroach infestation. He didn't let his supervisor know about that until he never did. The next day, Mr. Hannon was copied on an email after it had been escalated. So that type of issue should have been immediately escalated. They had a meeting on February 9th to talk about the issue and Mr. Hannon told Mr. Seuss you need to stay on this, remediate this and fix it. And they stayed in constant communication about that and he didn't. In fact, on March 17th, Mr. Hannon learned not only was the Cockroach infestation persisting, that Mr. Seuss had allowed the Orkin treatments, the extermination treatments to drop off. And not only that, he knew about it. He knew they had dropped off and didn't ask them to come back. And on that March 17th... I thought that evidence was that as soon as he found out that they weren't coming as frequently, he directed them to start coming every day or every other day as they were before. He did at some point, Your Honor, but not immediately. As of March 17th, he had not done that. Following that March 17th meeting, he did do that. And... When did he learn that they weren't coming as frequently? I don't know if the exact date is in the record, but there is evidence that it was weeks. It was a matter of weeks. And at that March 17th meeting preceding the termination, he was there not only with Mr. Hannon, who saw upwards of six cockroaches, but another field leader that worked for Mr. Hannon named Elsa Armendariz, and a cockroach fell on her from the ceiling. This is something that if he was actually in his restaurants, it's something that he would have noticed. Well, Counsel, I guess I don't have a problem with the idea that Mr. Sousa, as the field manager's responsible for the cleanliness of the store, and it seems to be the evidence was there was an infestation of cockroaches. And that's a problem for him because that's his responsibility. What I'm having trouble, though, is on the comparator evidence. I guess I understood the Ms. Chaparro distinguishment to be something other and different than, well, there's no evidence of her culpability. I mean, it's her store. She's the field manager, so she's in charge of making sure it's clean. So is there another way to distinguish her as a comparator to Mr. Sousa other than saying, well, it's his responsibility, we're gonna hold him to it, but not her because we don't have evidence of culpability? Absolutely, Your Honor. It's the frequency of the misconduct and the severity of the misconduct. And I think a helpful case to look at is the Kendrick versus Penske transportation case from the 10th Circuit. And that's a case where the plaintiff there was terminated after getting into a physical altercation with another employee. He bumped chests with him and he was fired for it. There was a comparator employee there who took a crowbar and threatened another employee, but didn't actually make physical conduct with the other employee. And the 10th Circuit supported the employer's decision in terminating the plaintiff there because they allowed them to find that a physical touching was more severe than simply threatening someone where a touching didn't actually occur. Similar conduct, but not the same. So here, we have a failed audit. Yes, Mr. Sousa didn't meet cleanliness standards in four audits and he had a long cockroach infestation. So kind of similar, but less severe and certainly different under the Penske case. Do you think the standard? Go ahead, Judge McHugh. I was just gonna switch to Mr. Sanchez, but if you wanna still talk about Ms. Shaparro. No, no, please proceed. Seems like we have more evidence about Mr. Sanchez's story than we do about Ms. Shaparro's. And it does seem that there was a bad roach infestation at store 861 and that there was a rodent issue in store 1684 and store 898 had persistent cleanliness problems that apparently due to using too much water to wash the floors. And cockroaches were seen a year after Sousa's termination and this store originally was Mr. Sousa's. Cockroaches were seen throughout store 3642. That sounds, how is that not a good comparator? Thank you, your honors. I'll attempt to go store by store. So store 861 was Tiffany Rodriguez's store, not Mr. Sanchez's. She took it over from him in September of 2020 and two months later she was terminated for a cockroach infestation that she failed to remediate. So if anything, your honor, that shows consistent treatment among managers who engaged in the same or similar misconduct. To go on to restaurant 1684, there wasn't any cockroach sighting at this restaurant. This was a rodent sighting and it was a rat that came in through a hole in the ceiling. And this is important to look at why pest sightings or rodent sightings or cleanliness issues at all occurred in a restaurant. Because to show pretext, it can't just be showing similar misconduct. It must show that there's no other non-discriminatory explanation for why the similar misconduct was treated differently. The rodent sighting at 1684 was different because there was a structural issue. There was a hole in the ceiling. There was no evidence of Mr. Sanchez not being proactive or mishandling the sighting and it was quickly fixed. With respect to store 898, this was, there were multiple cockroach sightings there, you're correct, but these were also structurally related. There was a grouting issue under the door where the grout kept deteriorating in that restaurant. Mr. Sanchez promptly responded and diligently attempted to resolve those sightings. All of this testimony, Your Honor, is at page 309 to 310 of the appellate record. With respect to page, to store 1684, that's at 306 to 307 and 315 of the appellate record. With respect to store 3642, this is not a restaurant that has ever been raised in this, by plaintiff appellant in this appeal that I've seen, so I'm not prepared to address that. But what I do know is that there's no evidence in the record that Mr. Hannon knew anything about any issue at that particular restaurant. Counsel, when we're looking at comparator evidence, there's some disagreement about the standard that applies under New Mexico law, whether it's nearly identical or comparable seriousness. Do you think it makes a difference to our analysis and the outcome, which standard? I don't, Your Honor, because the court, the district court analyzed the comparator evidence under both standards. And if you look at pages 89 and 87 of the order, you can see the judge's analysis with respect to Ms. Chaparro under the comparable seriousness standard and Mr. Sanchez under that standard. And just to direct Your Honors to the appellate record, going back to the comparators, everything that we have, all of the evidence we have on the misconduct of Mr. Sanchez, there's no evidence that Mr. Hannon was aware of it. The only thing we have in the record is that Mr. Hannon thought there might have been an issue. There's no other evidence that all of the specific issues at the restaurants that we detailed in our reply brief before the district court was something that Mr. Hannon was aware of or addressed. In my final minute, I did want to address the appellant's argument that the district court did not consider the evidence of pretext as a whole. First of all, there's no indication that the district judge didn't consider the evidence the whole. It was a 98-page order that exhaustively detailed the appellant's evidence of pretext. So there are no magic words that a district judge has to use to say, I considered the evidence as a whole. That would be a hyper-technical and absurd requirement that the Tenth Circuit doesn't apply and doesn't require. And plaintiff's counsel or appellant's counsel appears to contend that even if none of her arguments amount to pretext, the sheer number of arguments is to pretext to be sufficient to get to trial. But mathematical precepts show that zero plus zero plus zero doesn't equal three. It still equals zero. So here, the fact that Mr. Sousa has numerous arguments about pretext doesn't, by their mere number, make them sufficient to survive summary judgment. This exact argument was considered by the Tenth Circuit and rejected in the Riggs versus Airtran Airways case, 497F3-1108, Tenth Circuit, 2007. So here, we would submit that this panel affirm the district court's random summary judgment. I thank you for your time and consideration. Thank you, counsel. Thank you. Thank you, Your Honor. To follow up on what was just said about Ms. Shaparo can't be held responsible and there's no indication that it was her responsibility for the failed EcoShirt audit, well, then that begs the question as to why Tiffany Rodriguez was fired for a store that she just inherited for Edwin Sanchez, who was never disciplined for any of his cleanliness issues at that store and whose name was actually still on the store when the only other person in her 50s under Pat Hannon's control was fired for similar issues, opposing counsel seems to think that that shows consistency. I think it shows a pattern of discrimination that Mr. Hannon was intent on getting the two only individuals who were in their 50s who were close to vesting on their 401k, who had a bigger financial interest in this corporation out of his team and making room for the two younger employees that he wanted on his team, which were both in their 20s and 30s. So, no. Does a pattern have to include the employees who are 40 or older as well? I don't think so, Your Honor, not when it comes to pretext. I think that, again, the overall cumulative argument is not zero plus zero plus zero equals three, it's the fact that we've got to take a step back and look at what happened altogether and look at the fact that Mr. Hannon took the only two individuals who were over 50, replaced them with younger employees, he used an extremely common issue as indicated by all of the organ records in Mr. Sanchez's case, as indicated by the failed EcoSure audits, cleanliness and pest issues are common in the restaurant industry, he capitalized on those only with respect to these two employees and with respect to Mr. Sousa, did not give him any opportunity to improve and his treatment of Mr. Sousa was completely disparate to the other younger employees on his team. And so for that reason, I think we have established at a minimum a material issue of fact with respect to pretext and would ask the court to reverse the district court's ruling. Thank you, counsel. Thank you for your arguments. The case is submitted and counsel are excused.